IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERTO MANUEL CHAVEZ YANEZ, INDIVIDUALLY, ON BEHALF OF THEMSELVES AND ROBERTO CHAVEZ CELIS, DECEASED; LETICIA CELIS ORTEGA, INDIVIDUALLY, ON BEHALF OF THEMSELVES AND ROBERTO CHAVEZ CELIS, DECEASED; SUSANA CHAVEZ CELIS, INDIVIDUALLY, ON BEHALF OF THEMSELVES AND ROBERTO CHAVEZ CELIS, DECEASED; CESAR CHAVEZ CELIS, INDIVIDUALLY, ON BEHALF OF THEMSELVES AND ROBERTO CHAVEZ CELIS, DECEASED; AND MIGUEL CHAVEZ CELIS, INDIVIDUALLY, ON BEHALF OF THEMSELVES AND ROBERTO CHAVEZ CELIS, DECEASED; | § § § § § § § § § § § § § § § § § § § § § § § § | SA-19-CV-01065-DAE |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| WWGAF, INC.,  UME, INC, | § § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Defendants WWGAF, Inc. d/b/a Rockin
River Rides and UME, Inc. d/b/a Camp Huaco Springs' Joint Motion for Summary Judgment
[#30].  Plaintiffs have also filed a Motion for Leave to File Surreply [#69].  The motions were
referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-
72 and Appendix C.  The undersigned has authority to enter a recommendation on Defendants'
motion for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B).  The undersigned has

authority to enter this Order on Plaintiffs' motion for leave to file a sur-reply pursuant to 28 U.S.C. § 636(b)(1)(A).

In evaluating the motions, the undersigned has also considered the Appendix to Defendants' Joint Motion for Summary Judgment [#31], Plaintiffs' Response to Defendants' Joint Motion for Summary Judgment [#64], Defendants' Reply and Objections to Summary Judgment Exhibits [#65], and Defendants' Reply to Plaintiffs' Motion for Leave to File Sur-Reply [#70].   For the reasons that follow, it is recommended that Defendants' motion for summary judgment be **DENIED**.   The Court will also **DENY** Plaintiff's motion to file a sur-reply and strike Plaintiffs' Sur-Reply [#67] from the record.

## I.  Background

This is a wrongful death suit stemming from the drowning death of Roberto Chavez Celis ("Celis") in the Guadalupe River on July 11, 2019.   Plaintiffs, all of whom are citizens of Mexico, are the parents and adult brothers of the deceased.   Defendant WWGAF, Inc. d/b/a Rockin R River Rides ("Rockin R") and Defendant UME, Inc. d/b/a Camp Huaco Springs ("Camp Huaco") jointly operate a river outfitter and river campground at a crossing of the Guadalupe River on River Road in Comal County, Texas.

Plaintiffs' Amended Complaint alleges that Plaintiffs paid to park at Defendants' businesses to access the river using Defendants' property.   (Am. Compl. [#17] at ¶ 11.)   While wading in the river, Celis allegedly fell off a 15-to-20-foot hidden drop and drowned due to a strong undercurrent and possible foot entrapment.   (*Id.* at ¶¶ 12–13.)   Plaintiffs assert claims under various theories of negligence, negligence per se, and gross negligence against Defendants based on their failure to post any warning signs on their property to inform business invitees of known dangers.   (*Id.* at ¶¶ 19–21.)   Plaintiffs allege that Defendants' failure to warn, failure to

offer lifesaving equipment, failure to render aid, and other negligent acts were the cause of Celis's death. (*Id.* at ¶¶ 16–17.) Plaintiffs bring this action as wrongful death beneficiaries under Texas's Wrongful Death and Survival Acts on behalf of themselves and all other heirs of Celis. (*Id.* at ¶ 1.) Those Plaintiffs who witnessed the drowning also bring claims for mental-anguish damages based on their status as bystanders. (*Id.* at ¶¶ 29–31.) This Court has diversity jurisdiction over these Texas-law claims because of Plaintiffs' Mexican citizenship. *See* 28 U.S.C. § 1332(a)(2).

Defendants moved to dismiss this case on the basis that they owed no legal duty to Plaintiffs or Celis that could serve as a basis of Plaintiffs' negligence claims. The undersigned held a status conference while the motions were pending and, for case management purposes, directed Defendants to withdraw their motions to dismiss and file a motion for summary judgment on the duty issue so the Court could rule with the benefit of an evidentiary record. The undersigned limited discovery to the threshold duty issue.

Defendants have now jointly moved for summary judgment. In their motion Defendants contend the applicable governing body of law is the law of premises liability, not negligent activity. They argue that they are entitled to summary judgment on Plaintiffs' claims because they owed Plaintiffs no duty because: (1) Defendants owed no common law legal duty to Plaintiffs or Celis; and (2) Plaintiffs' claim of negligence per se is foreclosed as a matter of law. The motion is ripe for the Court's review.

## II. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III.  Summary Judgment Record

The summary judgment record establishes the following facts pertinent to the issues raised in Defendants' summary judgment motion.  Plaintiffs and Celis visited Camp Huaco Springs on July 11, 2019.  For the purposes of adjudicating this motion for summary judgment, the Court assumes without deciding that Camp Huaco Springs is jointly owned and operated by Defendants as lessees, a contention that Defendants do not dispute in their motion.  Defendants operate under the same permit issued by the Comal County Water Oriented Recreation District (hereinafter "WORD").  (Dussere Dep. [#64-4] at 111:21–24.)

It is undisputed that Plaintiffs and Celis paid to park at Camp Huaco Springs to access the river on July 11 but did not rent any water-oriented recreation equipment or seek recreational guide services from Defendants.[1]  (Answers to Rockin R's Requests for Admission [#31-4] at 3–5; Answers to Camp Huaco Springs' Requests for Admission [#31-5] at 3–5.)  Nor did anyone in Plaintiffs' group bring any inner tubes, life jackets, or other flotation devices with them when they visited the river that day.  (Hernandez Dep. [#31-7] at 15:2–16:25.)  The only items purchased from Defendants were a barbecue pit for a picnic and some candy, chips, and sodas. (Hernandez Dep. [#31-7] at 15:13–15; Answers to Rockin R's Requests for Admission [#31-4] at 3–4; Answers to Camp Huaco Springs' Requests for Admission [#31-5] at 3–4.)  However, Plaintiffs maintain that, prior to his drowning, Celis had asked an employee of Defendants about the cost of a double inflatable tube for rent.  (Answers to Rockin R's Requests for Admission [#31-4] at 3; Answers to Camp Huaco Springs' Requests for Admission [#31-5] at 3; Hernandez Dep. [#31-7] at 15:7–19.)  Plaintiffs state that Celis had intended to rent the tube and had given

---

[1] The discovery requests define water-oriented recreational equipment as "canoes, boats, kayaks, jetskis [sic], windsurfers, rafts, inner tubes, or other similar device suitable for transportation of individuals or personal belongings on the Guadalupe River."  (*See, e.g.*, Answers to Rockin R's Requests for Admission [#31-4] at 4.)

Jose Hernandez, his brother-in-law, money to cover half of its cost before he entered the river. (Answers to Rockin R's Requests for Admission [#31-4] at 3; Answers to Camp Huaco Springs' Requests for Admission [#31-5] at 3; Hernandez Dep. [#31-7] at 15:7–19.)

The drowning accident occurred when Celis was chasing a beach ball that had floated downstream from Plaintiffs' picnic site. (Incident Report [#64-8] at 5; Incident Supplement Report [#64-8] at 7.) The incident reports completed by the officers responding to the drowning state that Celis was seen chasing the ball but then became "fatigued" and went under the water before he reached the ball. (Incident Report [#64-8] at 5; Incident Supplement Report [#64-8] at 7.) The reports further state that Celis was described as not being a strong swimmer and not being under the influence of any substance or medication at the time of his death. (Incident Report [#64-8] at 5; Detective Detail Report [#64-8] at 8.) The autopsy report performed confirms that Celis was indeed not under the influence of alcohol or drugs at the time of his death. (Autopsy Report [#64-9] at 2.) It took first responders somewhere between two and three hours to locate Celis's body in the river. (Incident Report [#64-8] at 5–6.)

WORD has enacted various policies, rules, regulations, and procedures governing recreational activities such as fishing, boating, commercial float operations, and picnicking applicable to permit holders like Defendants within the District. (WORD Policies [#31-3] at 1; Dussere Aff. [#31-6] at 1.) These policies include a requirement that "all permit holders providing water oriented recreation equipment for rent" shall "[d]isplay public safety information at principal locations" and "provide safety orientation for all customers." (*Id.* at 5.) All permit holding business offering flotation devices for hire also must "make available" a U.S. Coast Guard approved personal flotation device. (*Id.*) A failure to comply with these provisions subjects a permit holder to the penalty provisions of Section 324.066 of the Texas Local

Government Code.  (*Id.*)  The Government Code provides that each person who will use rented water-oriented recreational equipment must sign a written agreement for the rental of that equipment.  Tex. Loc. Gov't Code § 324.901(c).  These policies were in effect at the time of the accident underlying this suit.  (Dussere Aff. [#31-6] at 2.)

It is undisputed that there were no warning signs posted at the entrance to the river on Defendants' property giving notice of any known dangers in the river, such as hidden pockets and holes.  (Dussere Dep. [#64-7] at 98:8–99:25.)  However, Defendants require each person renting water-oriented equipment at Camp Huaco Springs to sign a release of liability, which contains written warnings as to the dangers of the Guadalupe River and advises renters to wear life jackets at all times and that those who are not strong swimmers should not enter the river. (Liability Release [#65-1] at 34–36.)  Because no one in Plaintiffs' party rented water-oriented equipment, no one was given these written warnings.

## IV. Analysis

In their summary judgment motion, Defendants contend that they did not owe Plaintiffs any duty to warn under Texas law, and that therefore Plaintiffs cannot establish an essential element of their premises liability claims.   Plaintiffs do not dispute that this is a premises liability case, but they contend that Defendants had both a common-law duty as well as duty under WORD policies to warn them about risks in the river.  Because the record does not establish that Defendants owed Plaintiffs no duty to warn as a matter of law, the Court should deny Defendants' motion for summary judgment.

**A.    Plaintiffs agree to Defendants' characterization of this case as a premises liability case.**

Defendants argue that this case should be construed as a premises liability case, not a negligent activity case, because the essence of Plaintiffs' negligence claims is that the waters and

conditions of the Guadalupe River pose a hidden danger, for which there is a duty to warn business invitees.  In a diversity action in which state law provides the rule of decision, this Court is bound to apply the law as interpreted by the state's highest court.  *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000).  Texas recognizes "two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect."  *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985)).  "Negligent activity and premises liability are both within the scope of negligence, but 'negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe.'"  *Mangham v. YMCA of Austin, Texas–Hays Cmtys.*, 408 S.W.3d 923, 929 (Tex. App.—Austin 2013, no pet.) (quoting *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)).

Plaintiffs respond that they are not seeking to recover under a theory of negligent activity. (Resp. [#64] at 4.)  Plaintiffs ask the Court to strike Paragraph 20(d) of their First Amendment Complaint, which alleges that Defendants were engaged in a dangerous activity, to clear up any confusion on this issue.  (First Am. Compl. [#17] at ¶ 20.)  The Court therefore construes this case in accordance with Texas law governing premises liability cases.

**B.**     **There is a genuine dispute of material fact as to whether Defendants owed Plaintiffs and/or Celis a legal duty.**

The Court should deny Defendants' motion for summary judgment because Defendants have not established as a matter of law that they did not owe Plaintiffs a legal duty for purposes of Plaintiffs' negligence claims.

8

The elements of a premises liability claim under Texas law are as follows:  (1) some condition on the premises posed an unreasonable risk of harm; (2) the owner[2] had actual or constructive knowledge of the condition; (3) the owner did not exercise reasonable case to reduce or eliminate the risk of harm; and (4) the owner's failure to use such care proximately caused the plaintiff's injuries.  *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006).  The test for cause-in-fact, or "but-for" causation, is whether (1) the act or omission was a substantial factor in causing the injury and (2) without the act or omission the harm would not have occurred.  *Id.*  As in any negligence action, a defendant in a premises liability case is liable only to the extent it owes the plaintiff a legal duty.  *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008).  The existence of duty is a question of law for this Court.  *Id.*

A landowner has a duty to exercise reasonable care to make its premises safe for business invitees.  *Austin v. Kroger Texas, L.P.*, 465 S.W.3d 193, 202–03 (Tex. 2015).  A landowner who is aware of a dangerous condition on the property can satisfy this duty by either eliminating or mitigating the dangerous condition such that it is no longer unreasonably dangerous or providing an adequate warning of the danger to the invitee.  *Id.* at 202.  Defendants do not contest that Plaintiffs and Celis were business invitees on the day of Celis's drowning.

There is no duty to warn, however, if the dangerous condition is commonly known. *Brookshire Grocery Co. v. Goss*, 262 S.W.3d 793, 795 (Tex. 2008).  Additionally, a person who does not own, occupy, or otherwise control real property ordinarily cannot be held liable for dangerous conditions thereon.  *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 706 (Tex. App.—Fort Worth 1998, pet. denied).  Therefore, to prevail on a premises-liability claim, a

---

[2]  Property owners, as well as lessees who have assumed control over property, are both subject to premises liability.  *See Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App.—Fort Worth 1998, pet. denied).  All future references to landowners apply equally to lessees.

plaintiff must typically prove "that the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999).

Defendants contend that they did not owe Plaintiffs or Celis a duty to warn of dangerous conditions in the Guadalupe River, because these conditions occurred not on premises owned, occupied, or controlled by Defendants but in the waters of a navigable river owned by the State of Texas.  Defendants cite various statutory provisions and case law to demonstrate the State's ownership of the Guadalupe and its definition as a navigable river.  But Plaintiffs' response indicates that they do not dispute this point and agree that the Guadalupe River itself is not property owned or leased by Defendants.  Plaintiffs nonetheless contend that Defendants owed them and Celis a legal duty to warn of dangerous conditions because Defendants (1) assumed a common law legal duty with respect to the portion of the Guadalupe River adjacent to their property and (2) had a statutory duty to warn business invitees of dangers in the river pursuant to the WORD policies governing permit holders like Defendants in the District.  The Court considers each of these arguments in turn.

> i.    Statutory Duty/Negligence Per Se

Plaintiffs' First Amended Complaint pleads a cause of action for negligence per se.  (First Am. Compl. [#17] at 8.)  "Negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person."  *Carter v. William Sommerville & Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).  A plaintiff thereby establishes a breach of a legal duty based on a violation of a statute that was designed to prevent an injury to that class of persons to which the plaintiff belongs.  *Id.*

Plaintiffs maintain that Defendants owed them and Celis a statutory duty under WORD Rule 100.6, regardless and independent of any common law duty to warn regarding dangerous conditions in the Guadalupe River.   Defendants argue that the summary judgment record establishes as a matter of law that Rule 100.6 did not impose any legal duty on Defendants to warn Plaintiffs or Celis of potentially dangerous conditions in the portion of the Guadalupe River fronting their property.   The undersigned disagrees with Defendants.

WORD Rule 100.6 is found in the "Policies, Rules, Regulations and Procedures for Permit Holders of the Comal County Water Oriented Recreation District."   (WORD Policies [#31-3] at 1–8.)[3]   The stated purposes of these policies are "to ensure compliance with minimum health and safety standards under federal, state and local laws;" "to govern the recreational activities in district facilities including but not limited to:   commercial float operations and devices; lodging, fishing, boating, picnicking, guide services and camping."   (*Id.* at 1.)   The term "permit holders" is defined as "those businesses who are subject to the collection of user fees and who have acquired a revenue (tax) permit."   (*Id.*)   Rule 100.6 is found in a section of the policies entitled "Public Safety, Water Safety, and Boating Safety."   (*Id.* at 5.)   The provision cited by Plaintiffs as a basis for Defendants' statutory duty is subsection (c), which reads as follows:

> (c) Instructions on Water Safety and Boating Safety.   All permit holders providing water oriented recreation equipment for rent shall:
>
> (1) Display public safety information at principal locations;
>
> (2) Provide safety orientation to all customers.

---

[3] The summary judgment record contains two versions of the WORD Rules, one dated November 2016 [#31-3] and one dated January 2017 [#64-10].   Rule 100.6 is identical in both versions.

11

(*Id.*)   A permit holder who fails to comply with these two provisions commits a Class C misdemeanor and is subject to the penalty provisions of Section 324.066 of the Texas Local Government Code.  (*Id.* at 5–6.)

Section 324.066 is a part of the Texas Local Government Code governing counties with frontage on the Guadalupe and Comal Rivers and the creation of the Park and Recreation District for those counties.  Tex. Loc. Gov't Code § 324.001, *et seq.*  Section 324.066 provides that the Board of the Park and Recreation District may adopt reasonable rules and ordinances applicable to "activities that endanger the health and safety of persons or property on public water in the district."  *Id.* at § 324.066(a)(3).  A person in violation of these rules and ordinances is subject to arrest for a Class C misdemeanor and the penalties associated therewith.  *Id.* at § 324.066(b)–(d).

Defendants maintain that the affidavit of Michael Dussere, General Manager of WORD, unambiguously establishes as a matter of law that the WORD policy requiring the "display of public safety information at principal locations" and the provision of a "safety orientation for all customers" only applies to customers who actually rent or acquire water-oriented recreation equipment from a permit holder.  (Dussere Aff. [#31-6] at 2.)  Dussere's affidavit advances his interpretation of Rule 100.6 and states that the rule only "applies to permit holding businesses when they are renting water-oriented recreation equipment to a customer" and that "[p]ermit holding businesses are not required to provide safety information or safety orientation to persons who are not renting water oriented recreation equipment or who are not occupying a raft or other flotation device being operated by the permit holder."  (*Id.* at 1–2.)

Resolving Defendants' motion for summary judgment requires this Court to engage in the construction of Rule 100.6(c).  Texas courts interpret administrative rules, like statutes, under traditional principles of statutory construction.  *See TGS-NOPEC Geophysical Co. v. Combs*, 340

12

S.W.3d 432, 438 (Tex. 2011).  A court's purpose in construing a statute (or rule) is to give effect to the expressed intent of the body drafting its language, here WORD.  *See Iliff v. Iliff*, 339 S.W.3d 74, 79–80 (Tex. 2011).  A court must consider statutes or rules as a whole rather than their isolated provisions. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004).  "Where statutory language is unambiguous and yields only one reasonable interpretation, [a court should] interpret a statute according to its plain meaning."  *Iliff*, 339 S.W.3d at 79 (internal quotation and citation omitted.)  "If there is vagueness, ambiguity, or room for policy determinations in a statute or regulation, . . . [courts] normally defer to the agency's interpretation unless it is plainly erroneous or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co.*, 340 S.W3d at 438.  This Court must presume that a statute's language was chosen with care and each word was included or omitted purposefully.  *Id.* at 439.

Applying these principles to the WORD rules at issue, Defendants have not established as a matter of law that they did not owe Plaintiffs or Celis a statutory legal duty to warn of dangerous conditions in the Guadalupe River.  First, Dussere's interpretation of the statute is not the starting point for this Court's analysis—the statutory (and rule) language is.  This Court would only consider WORD's interpretation of the statute and rule—if the individual perspective of WORD's general manager could be considered the interpretation of the enacting body—after first finding that the language of the statute is ambiguous.  And, moreover, even if there were ambiguity, the Court would not give credence to Dussere's interpretation here, as it is inconsistent with the plain language of Rule 100.6.

A reading of the WORD rules as a whole and Rule 100.6 in context do not support Defendants' restrictive reading of the duties imposed on permit holders.  First, the WORD rules

govern a non-exclusive list of "recreational activities" in the district and are not limited only to those activities involving water-oriented recreation. (WORD Policies [#31-3] at 1.) Rule 100.6(c), which falls under a subsection relating to public safety, water safety, and boating safety (significantly, not just boating safety), imposes two duties on all permit holders "providing water oriented recreation equipment for rent." (*Id.* at 5.) This subset of permit holders, to which Defendants indisputably belong, must "(1) [d]isplay public safety information at principal locations" and (2) [p]rovide safety orientation to all customers." (*Id.*) A plain reading of the introductory sentence of Rule 100.6(c) imposes these two duties on permit holders who provide water-oriented recreation for rent generally, without a specific limitation to those instances in which these permit holders are engaged in certain commercial transactions with certain customers. Accordingly, to derive such a limitation from the statute there must be additional restrictive language found in subsections (1) or (2) defining the two duties.

Regarding the first duty—to "display public safety information at principal locations"— no such restrictive language appears. Significantly, there is no reference to the term "customer" as to this duty; instead, WORD uses the word "public" with respect to the safety information. In contrast, the word "customer" is used with respect to the second duty to "provide safety orientation to all customers." This linguistic distinction can only give rise to one reasonable interpretation if meaning is given to all terms—that the duty to display safety information is broader than the duty to provide safety orientation and is not limited to only those individual customers renting water-oriented recreation equipment. In other words, permit holders owe the "public" a duty to display safety information and "customers" a duty to provide safety orientation. To adopt Defendants' and Dussere's narrower interpretation of the first duty would require the Court to insert additional terms into the rule's language and ignore these important

distinctions between the two duties.  A plain reading of the rule does not support Defendants'
interpretation that there is no duty to the display public safety information to persons who are not
customers renting water-oriented recreation equipment.

In summary, Defendants have not established as a matter of law that they owed no
statutory legal duty to Plaintiffs or Celis, the breach of which would constitute *negligence per se*
if there is a finding that any failure to post public safety information proximately caused Celis's
drowning.  Nothing in this recommendation precludes Defendants from moving for summary
judgment at a later date on bases other than the existence of a statutorily created duty.

ii.    Assumed Common Law Duty

As to Plaintiffs' argument regarding an assumed common law duty, Texas recognizes
four "assumed duty" exceptions to the general rule limiting landowner liability to dangerous
conditions on premises possessed by the landowner.  First, a person who agrees or contracts,
either expressly or impliedly, to make safe a known, dangerous condition of real property may be
held liable for the failure to remedy the condition.  *City of Denton v. Page*, 701 S.W.2d 831, 835
(Tex. 1986).  Second, a person who has created a dangerous condition may be liable even though
not in control of the premises at the time of injury.  *Id.*  Third, a lessee who assumes actual
control over a portion of adjacent property also assumes legal responsibility for that adjacent
portion, even though none of the adjacent property is included in the lease.  *Wal–Mart Stores,
Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993).  Fourth, where an obscured danger exists on
land directly appurtenant to the land owned or occupied, and where that danger is near a place
where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes
a duty to those invitees entering and exiting to warn of the danger.  *See Renfro Drug Co. v.*

15

*Lewis*, 235 S.W.2d 609, 615 (Tex. 1950); *Parking, Inc. v. Dalrymple*, 375 S.W.2d 758, 762 (Tex. Civ. App.—San Antonio 1964, no writ).

Defendants contend none of these exceptions apply.  Plaintiffs respond that the first, third, and fourth exceptions apply because Defendants "control" the stretch of the Guadalupe River that abuts their leased business property.  On the limited evidentiary record before the Court, Defendants have also not established as a matter of law that none of these fact-intensive exceptions apply.  For example, one of the seminal cases regarding the fourth exception, *Parking, Inc. v. Dalrymple*, illustrates how fact-intensive the question of an assumed duty can be. In that case, a young boy was killed when he fell into a creek while running from a parking lot leased by the defendant to an adjacent theater.  375 S.W.3d at 759.   The court found that it could be reasonably anticipated that the facilities of the parking lot would be used by persons going to the theater on the adjoining lot, particularly in light of the fact that a sign advertised free parking for the theater.  *Id.* at 762.  The evidence at trial showed that a creek abutting the parking lot was obstructed by the manner in which cars were parked to extend out over the creek.  *Id.* at 762–63. The court could not say under these factual circumstances that as a matter of law the defendant did not owe its invitees the duty to either erect a barrier or give proper warning of the dangerous condition, even though that condition was not on the leased property.  *Id.* at 763.

The summary judgment record does not contain sufficient facts to evaluate whether the exceptions apply, facts that might elucidate the precise location of the drowning, the shape of the river bank, the depth of the river at various points, and the relative property boundaries of Camp Huaco.  The Court limited discovery so that the parties could address the threshold issue of duty, and the Court was able on this limited record to evaluate the issue of whether the WORD rule gave rise to a duty.  After a more complete record is developed and additional depositions are

taken, either party may move for summary judgment on the question of the existence of a common law duty, if appropriate.

      iii.    <u>Objections to Summary Judgment Evidence</u>

Defendants raise various objections to Plaintiffs' summary judgment evidence, evidence that the Court did not rely upon in issuing this opinion. Accordingly, the objections are dismissed as moot.

      iv.    <u>Motion to File a Sur-Reply</u>

Finally, the Court will deny Plaintiffs' motion for leave to file a sur-reply as the arguments raised in the sur-reply would not assist the Court in resolving Defendants' motion, and the motion, response, and reply adequately brief the issues.

## V.  Conclusion and Recommendation

Having considered the record in this case and the governing law, the undersigned **recommends** that Defendants WWGAF, Inc. d/b/a Rockin River Rides and UME, Inc. d/b/a Camp Huaco Springs' Joint Motion for Summary Judgment [#30] be **DENIED**. The undersigned also **recommends** that the District Court **STRIKE** Paragraph 20(d) of Plaintiffs' First Amendment Complaint related to negligent activity.

**IT IS ALSO ORDERED** that Plaintiffs' Motion for Leave to File Surreply [#69] is **DENIED** and Plaintiffs' Sur-Reply [#67] is **STRICKEN** from the record.

## VI.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be

filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of May, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE